1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CARLOS R. AGUIRRE,                          No.  2:  12-cv-2165 TLN KJN P

12                  Plaintiff,

13          v.                                    FINDINGS AND RECOMMENDATIONS

14    COUNTY OF SACRAMENTO, et al.,

15                  Defendants.

16

17    I. Introduction

18       Plaintiff is a former state prisoner, proceeding without counsel, with a civil rights action

19    pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion to dismiss for

20    failure to state a claim pursuant to 42 U.S.C. § 1983, and for failure to exhaust administrative

21    remedies.  For the following reasons, the undersigned recommends that defendants' motion be

22    granted in part and denied in part.

23    II. Legal Standard for Motion to Dismiss for Failure to State a Claim

24          Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

25    "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

26    considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

27    must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

28    (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

1

1   McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

2   1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

3   than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

4   cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

5   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

6   statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

7   upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

8   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

9   draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

10   U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

11   of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co.,

12   896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).

13       A motion to dismiss for failure to state a claim should not be granted unless it appears

14   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

15   entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se

16   pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

17   404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz

18   v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc).  However, the court's liberal

19   interpretation of a pro se complaint may not supply essential elements of the claim that were not

20   pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

21   III. Plaintiff's Claims

22       This action is proceeding on the amended complaint filed January 3, 2013.  The

23   defendants are Sacramento County Sheriff's Deputies Place and Kinder, Sacramento County

24   Sheriff's Sergeants Martinez and Oania, Sacramento County Sheriff's Lieutenant Andris,

25   Sacramento County Sheriff's Captain Cooper and Sheriff Jones. These defendants are sued in

26   their personal and official capacities.  Also named as a defendant is Sacramento County.

27       Plaintiff was classified as a protective custody ("PC") inmate while housed at the

28   Sacramento County Jail.  (ECF No. 21 at 6.)  On March 22, 2012, plaintiff was instructed to put

2

1   on his tan PC shirt required for court attendance.  (Id.)  Plaintiff was taken to the basement of the

2   court and placed in a holding area with other PC inmates.  (Id.)  As plaintiff and the other PC

3   inmates were taken up the stairwell to the courtroom for their hearings by defendants Place and

4   Kinder, they passed general population ("GP") inmates who were in the stairwell waiting for their

5   court hearings.  (Id. at 7.)  Inmate Abeyta, a GP inmate waiting in the stairwell, attacked plaintiff.

6   (Id.)  Plaintiff suffered injuries as a result of the attack. (Id. at 10-14.).

7           Plaintiff alleges that immediately after the attack, neither defendant Kinder nor defendant

8   Place took steps to determine whether plaintiff required medical attention even though he had a

9   bloody laceration on the outside of his lip.  (Id. at 8-9.)  After he returned to the holding tank,

10  following his court hearing, plaintiff began feeling severe pain in his mouth and jaw.  (Id. at 10.)

11  Plaintiff called defendant Place to the holding cell and told him that he wanted to see medical.

12  (Id. at 11.)  Defendant Place looked at plaintiff's lip and said, "you're fine."  (Id.)  Defendant

13  Place offered to get plaintiff some ice for his lip. (Id.)  Approximately 30 minutes later defendant

14  Place returned with the ice.  (Id. at 11-12.)

15          Plaintiff alleges that he decided to wait until he got back to his housing area to ask for

16  medical help because he did not want to "piss-off" defendants.  (Id. at 12.)

17          After plaintiff returned to his housing unit, he informed the floor officer of his medical

18  need.  (Id.at 13.)  A short time later, a nurse examined plaintiff's lip and told him that she would

19  get him to a doctor.  (Id.)  Some time later, plaintiff was seen by Dr. Nugget, who informed

20  plaintiff that his cut lip would require sutures.  (Id.)  Plaintiff continued to suffer great pain and

21  the sutures did not dissolve as promised.  (Id.  at 13-14.)  Plaintiff alleges that his inner lip now

22  has a lump of scar tissue.  (Id. at 14.)

23          Plaintiff alleges that defendant Sacramento County has a policy of having GP inmates

24  wait in stairwells for court while PC inmates use the same stairwells without a deputy escort and

25  with no protective barrier.  (Id. at 17.)  Plaintiff alleges that this policy poses a substantial risk of

26  harm to PC inmates because they risk attack by GP inmates.  (Id.)

27          Plaintiff alleges that defendant Sacramento County is responsible for the conditions of the

28  holding area. (Id. at 36.)  Plaintiff alleges that the purpose of the holding tanks in the holding area

1   is to securely maintain inmates awaiting court hearings.  (Id. at 37.)  Plaintiff alleges that multiple

2   tanks were installed to allow jail officials to separate different classes of inmates.  (Id.)  Plaintiff

3   alleges that defendants have chosen to bypass the use of the holding tanks and instead direct GP

4   inmates to wait in the stairwells, putting PC inmates at a great risk of danger.  (Id.)  Plaintiff

5   alleges that by bypassing the use of holding tanks, defendants have created a custom and/or

6   policy or de facto policy of unsafely mixing the GP and PC inmates.  (Id.)

7           Plaintiff seeks injunctive relief and monetary damages.

8           Plaintiff alleges that defendants violated his constitutional right to be free from violence at

9   the hands of other inmates and his right to adequate medical care, conspired to violate his

10   constitutional rights, retaliated against him for filing a grievance, and acted negligently in

11   violation of state law.

12   IV. Discussion re: Motion to Dismiss For Failure to State a Claim

13           A.   Official Capacity

14           Defendants argue that plaintiff's official capacity claims against defendants Jones,

15   Cooper, Andris, Martinez, Oania, Place and Kinder should be dismissed as duplicative and

16   unnecessary.

17           A suit against a governmental officer in his official capacity is equivalent to a suit against

18   the governmental entity itself.  Gomez v. Vernon, 255 F.3d 1118, 1126 (9th Cir. 2011); Mitchell

19   v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996).  Because plaintiff alleges that the individual

20   defendants, or at least most of them, are official policy-makers for defendant Sacramento County,

21   plaintiff's section 1983 claims against the individually named defendants in their official

22   capacities are claims against defendant Sacramento County.  See Cortez v. County of Los

23   Angeles, 294 F.3d 1186, 1189–92 (9th Cir. 2002); Streit v. County of Los Angeles, 236 F.3d 552,

24   564–65 (9th  Cir.), cert. denied, 534 U.S. 823 (2001).

25           If an officer is sued both in his personal and official capacities, "it would be proper for the

26   court, upon request to dismiss the officer and substitute instead the local government entity as the

27   correct defendant."  Luke v. Abbott, 954 F.Supp. 202, 204 (C.D. Cal. 1997).  Accordingly,

28   because defendant Sacramento County is named as a defendant, defendants' motion to dismiss

4

1   the official capacity claims against the individually named defendants should be granted.

2        Defendants also argue that plaintiff has failed to state colorable official capacity claims

3   against any of the individually named defendants.  Because the official capacity claims against

4   the individual defendants should be dismissed for the reasons discussed above, the undersigned

5   need not reach this issue.

6        B.  Failure to Protect Claims

7        *Claims Against Defendant Sacramento County*

8        Defendants move to dismiss plaintiff's failure to protect claims against defendant

9   Sacramento County on grounds that he has not stated a potentially colorable Eighth Amendment

10  claim.

11       A municipality such as the county is a "person" under section 1983; however, a

12  municipality "cannot be held liable solely because it employs a tortfeasor—or, in other words, a

13  municipality cannot be held liable under § 1983 on a respondeat superior theory."  Monell v.

14  Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978).  A municipality may be

15  liable under section 1983 for monetary, declaratory, or injunctive relief where the constitutional

16  deprivation was caused by the implementation or execution of "a policy statement, ordinance,

17  regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436

18  U.S. at 690; see Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403–04

19  (1997).

20       To establish municipal liability, plaintiff must show: (1) he was deprived of a

21  constitutional right; (2) the county had a policy, practice, or custom; (3) the policy, practice, or

22  custom amounted to deliberate indifference to one or more of plaintiff's constitutional rights; and

23  (4) the policy, practice, or custom was the "moving force behind the constitutional violation."

24  Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).

25       Because it appears that plaintiff was a pretrial detainee, and not a convicted prisoner, at

26  the time of the incident, the applicable standard is by way of the due process clause of the

27  Fourteenth Amendment rather than the Eighth Amendment:  "Due process requires that a pretrial

28  detainee not be punished."  Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).  "A sentenced

1    inmate, on the other hand, may be punished, although that punishment may not be "cruel and

2    unusual" under the Eighth Amendment." Id.  Nevertheless, as the rights of pretrial detainees

3    under the Fourteenth Amendment "are comparable" to prisoners' Eighth Amendment rights, the

4    same standards are applied. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998), citing Redman

5    v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991).

6         This is not a case involving the application of force to quell a disturbance in which case a

7    cruel and sadistic standard would apply. Wilson v. Seiter, 501 U.S. 294, 299 (1991).  Rather, the

8    issue here is one of failure to protect (whether purposeful or otherwise), which would be

9    governed by Farmer v. Brennan, 511 U.S. 825 (1994).  Deliberate indifference is the appropriate

10   standard to be applied here.

11        A prison official's deliberate indifference to a substantial risk of harm to an inmate

12   violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. at 828.  To succeed on a claim of

13   deliberate indifference to the threat of serious harm or injury by another prisoner, plaintiff must

14   demonstrate that the deprivation of his rights was "objectively, sufficiently serious." Id. at 834.

15   When the claim is predicated upon the failure to protect, the deprivation is deemed to be

16   sufficiently serious if there was a substantial risk that the prisoner would suffer serious harm. Id.

17   The prisoner must also demonstrate that the defendant had a "sufficiently culpable state of mind."

18   Id.  The prisoner must demonstrate that the defendant knew of and disregarded an excessive risk

19   to his safety: "the official must both be aware of facts from which the inference could be drawn

20   that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

21        Defendants argue that plaintiff has failed to identify a county policy that gave rise to the

22   incident at issue.  Defendants argue that plaintiff pleads only "labels and conclusions" alleging

23   that defendant Sacramento County acted with deliberate indifference by using stairwells as a

24   holding area for GP inmates, while acknowledging that defendant Sacramento County has a

25   written policy for segregation of PC inmates, separate holding cells for GP and PC inmates, uses

26   clothing that distinguishes PC inmates, and has officers at the top and the bottom of the stairwell

27   when PC inmates use the stairs into the court.  Defendants also note that plaintiff alleges that after

28   he was assaulted, defendants began providing PC inmates with escorts while they used the stairs

6

1    to get into the court.

2          Plaintiff alleges that defendant Sacramento County has a policy of totally separating GP

3    inmates from PC inmates except on the stairwell.  Plaintiff alleges that defendant Sacramento

4    County permits the mixing of GP and PC inmates on the stairwell because it would take too long

5    to release the GP  inmates from the holding cells and escort them to court.  In other words,

6    plaintiff alleges that defendant disregards the safety of PC inmates in order to promote

7    convenience.

8          Plaintiff alleges that GP and PC inmates are separated in the Sacramento County Jail

9    because GP inmates are "mandated" to assault PC inmates. (ECF No. 21 at 8.)  Plaintiff alleges

10   that after attacking plaintiff, inmate Abeyta stated that "I can't be around those guys (PC

11   inmates)."  (Id.)  Plaintiff alleges that defendants were all aware of the constant and long standing

12   threat of violence posed by GP inmates to PC inmates, which created the need for "protective

13   custody status."  (Id. at 17.)  Plaintiff alleges that all defendants knew of the risk of harm created

14   if PC and GP inmates were mixed.  (Id.)  Plaintiff alleges that the "rule" mandating GP inmates

15   assault PC inmates is long-standing, well grounded and established throughout all correctional

16   institutions, including the Sacramento County Jail.  (Id. at 18.)

17         Plaintiff argues that having correctional officers wait at the top and bottom of the stairs

18   and escort the PC inmates as they ascend the stairs does not sufficiently protect the PC inmates.

19   Plaintiff alleges that he was injured as a result of defendant's policy of failing to totally separate

20   PC inmates from GP inmates as they enter the court.

21         Plaintiff's allegations regarding defendant's policy of mixing GP and PC inmates are

22   more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements

23   of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  Because

24   defendant Sacramento County allegedly separates GP and PC inmates in all other circumstances,

25   defendant's alleged policy of allowing GP inmates and PC inmates to be in such close proximity

26   when they enter the court, allegedly due to convenience, may be unconstitutional.  For these

27   reasons, the undersigned finds that plaintiff has stated a colorable Fourteenth Amendment claim

28   against defendant Sacramento County for failing to protect plaintiff.  Defendant's motion to

                                                    7

1    dismiss on this ground should be denied.

2              *Claims Against Defendants Jones, Cooper, Andris, Martinez, Place and Kinder*

3              The individually named defendants, except for defendant Oania, argue that plaintiff has

4    not pled sufficient facts to state a colorable Fourteenth Amendment failure to protect claim

5    against them.  Defendants argue that plaintiff has not alleged that any named defendant was

6    aware of any facts that inmate Abeyta, who attacked plaintiff, posed a threat to plaintiff.

7    Defendants argue that there are no facts that would permit an inference that any individually

8    named defendant would have had a suspicion that an assault would occur while deputies were

9    transporting inmates.  Defendants argue that plaintiff has plead facts demonstrating that

10   defendants actually took steps to protect his safety including placing him in a holding tank for

11   protective custody inmates, dressing him in clothing that would identify him as a protective

12   custody inmate and having deputies present as he ascended the stairwell.

13             For the same reasons discussed above that the undersigned finds that plaintiff has met his

14   burden of alleging a failure to protect claim against defendant Sacramento County, the

15   undersigned finds that plaintiff has met his burden of pleading sufficient facts in support of the

16   objective component of his failure to protect claim.  Plaintiff has pled facts from which it may be

17   reasonably inferred that he, as a PC inmate, suffered a substantial risk of harm when he walked up

18   the stairs from the holding area to the courtroom.  While plaintiff has not alleged that he or

19   defendants knew that inmate Abeyta specifically posed a threat of harm, plaintiff has alleged that

20   PC inmates generally suffered a serious risk of harm if housed with or allowed to be in the same

21   proximity as GP inmates.  Based on the nature of plaintiff's allegations, plaintiff is not required to

22   show that defendants knew that inmate Abeyta posed a risk of harm to plaintiff.

23             Defendants also argue that the measures taken to protect PC inmates demonstrate that

24   plaintiff did not suffer a serious risk of harm.  Plaintiff is alleging that defendants took steps to

25   protect PC inmates and kept them totally separated from GP inmates except when they ascended

26   the stairwell to enter the courtroom.  Plaintiff alleges that he was still in danger from the GP

27   inmates while ascending the stair even though there were sheriff's deputies at the top of the stairs.

28   After plaintiff was attacked, defendants changed their policy to include officer escorts while PC

1   inmates ascended the stairs.  However, for purposes of the pending motion to dismiss, the

2   undersigned finds that the measures allegedly taken to protect the PC inmates at the time plaintiff

3   was attacked did not mitigate the substantial risk of harm the PC inmates faced when ascending

4   the stairwell occupied by the GP inmates.

5          Turning to the objective component of plaintiff's failure to protect claim, defendants argue

6   that plaintiff has not plead sufficient facts demonstrating that each individually named defendant

7   acted with deliberate indifference.

8          Regarding defendant Sheriff Jones, defendants argue that plaintiff has failed to allege any

9   facts against defendant Jones other than that he had policy-making authority.

10         The Civil Rights Act under which this action was filed provides as follows:

11             Every person who, under color of [state law] . . . subjects, or causes
               to be subjected, any citizen of the United States . . . to the
12             deprivation of any rights, privileges, or immunities secured by the
               Constitution . . . shall be liable to the party injured in an action at
13             law, suit in equity, or other proper proceeding for redress.

14   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

15   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

16   Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

17   liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

18   affirmative link between the incidents of police misconduct and the adoption of any plan or policy

19   demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

20   to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

21   affirmative act, participates in another's affirmative acts or omits to perform an act which he is

22   legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,

23   588 F.2d 740, 743 (9th Cir. 1978).

24         Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

25   their employees under a theory of respondeat superior and, therefore, when a named defendant

26   holds a supervisorial position, the causal link between him and the claimed constitutional

27   violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)

28   (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d

9

1   438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert.

2   denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of

3   official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673

4   F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal

5   participation is insufficient).

6        Supervisors may be held liable if they "participated in or directed the violations, or knew

7   of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.

8   1989).

9        Plaintiff alleges that defendant Sheriff Jones had the "authority and ability to halt the

10  unsafe mixing of PC and GP inmates despite his knowledge of the safety risks such mixing poses,

11  allowed the mixing to continue, and continues to allow such mixing of PC and GP inmates in

12  blatant and willful disregard of plaintiff's and all PC inmates' safety and protection."  (ECF No.

13  21 at 36.)  Plaintiff goes on to allege that defendant Jones either created the policy of permitting

14  the mixing of GP and PC inmates on the stairwell or knowingly acquiesced to its creation and

15  implementation. (Id. at 47.)

16       Plaintiff's claim that defendant Sheriff Jones created the at-issue policy or knowingly

17  acquiesced to its implementation is facially plausible.  See Iqbal, 556 U.S. at 678.  Based on these

18  allegations, the undersigned finds that plaintiff has pled sufficient facts linking defendant Jones to

19  the at-issue policy.  Accordingly, defendants' motion to dismiss the claims against defendant

20  Jones on these grounds should be denied.

21       Defendants move to dismiss the claims against defendant Cooper because plaintiff's

22  claims against this defendant seem to be *only* that his grievances were not processed to his

23  satisfaction.  "[I]nmates lack a separate constitutional entitlement to a specific prison grievance

24  procedure."  Ramirez v. Galaza, 334 F.3d 850, 969 (9th Cir. 2003).

25       Plaintiff alleges that on July 3, 2012, defendant Cooper responded to plaintiff's grievance

26  regarding the at-issue policy, stating that there was no additional information he could provide.

27  (ECF No. 21 at 36.)  Plaintiff goes on to allege that defendant Cooper, as the Commander of the

28  Court Security Division, either created or knowingly acquiesced to the implementation of the

10

1   policy permitting the mixing of GP and PC inmates on the stairwell.  (Id. at 47.)

2        Plaintiff's claim that defendant Cooper, the Commander of the Court Security Division,

3   created or permitted the implementation of the at-issue policy is facially plausible.  See Iqbal, 556

4   U.S. at 678.  Based on these allegations, the undersigned finds that plaintiff has pled sufficient

5   facts linking defendant Cooper to the at-issue policy.  Plaintiff is not basing defendant Cooper's

6   liability solely on his response to a grievance.  Accordingly, defendants' motion to dismiss

7   defendant Cooper on these grounds should be denied.

8        Defendants move to dismiss the claims against defendant Andris on grounds that the only

9   claim against this defendant is that he responded to one of plaintiff's grievances.  Plaintiff alleges

10  that on June 12, 2012, defendant Andris responded to plaintiff's grievance regarding the incident.

11  (ECF No. at 35.)  However, plaintiff goes on to allege that defendant Andris, the Assistant

12  Commander of the Court Security Division, either created or knowingly acquiesced to the

13  implementation of the policy permitting the mixing of GP and PC inmates on the stairwell.  (Id. at

14  47.)

15       Plaintiff's claim that defendant Andris, the Assistant Commander of the Court Security

16  Division, created or permitted the implementation of the at-issue policy is facially plausible.  See

17  Iqbal, 556 U.S. at 678.  Based on these allegations, the undersigned finds that plaintiff has pled

18  sufficient facts linking defendant Andris to the at-issue policy.  Plaintiff is not basing defendant

19  Andris's liability solely on his response to a grievance.  Accordingly, defendants' motion to

20  dismiss defendant Andris on these grounds should be denied.

21       Defendants move to dismiss the claims against defendant Martinez on grounds that

22  plaintiff's claims against defendant Martinez are based on his response to a grievance.  Plaintiff

23  alleges that defendant Martinez interviewed him in response to a grievance he filed regarding the

24  incident.  (ECF No. 21 at 24-26.)  Plaintiff goes on to allege that defendant Martinez, a Sergeant,

25  either created or knowingly acquiesced to the implementation of the policy permitting the mixing

26  of GP and PC inmates on the stairwell.  (Id. at 48.)

27       Plaintiff's claim that defendant Martinez, a Sergeant, created or permitted the

28  implementation of the at-issue policy is facially plausible.  See Iqbal, 556 U.S. at 678.  Based on

11

1   these allegations, the undersigned finds that plaintiff has pled sufficient facts linking defendant

2   Martinez to the at-issue policy.  Plaintiff is not basing defendant Martinez's liability solely on his

3   response to a grievance.  Accordingly, defendants' motion to dismiss defendant Martinez on these

4   grounds should be denied.

5          Defendants move to dismiss the claims against defendants Place and Kinder on grounds

6   that there are no allegations in the amended complaint that defendants had knowledge that

7   plaintiff faced a substantial risk of harm when he ascended the stairwell that was occupied by the

8   GP inmates.

9          Plaintiff alleges that defendants Place and Kinder were the deputies who directed plaintiff

10  to ascend the stairwell where the GP inmates were standing.  (ECF No. 21 at 7.)  Plaintiff alleges

11  that defendants Place and Kinder knew that plaintiff was a PC inmate.  (Id.)  Plaintiff alleges that

12  all defendants, including defendants Place and Kinder, had knowledge that PC inmates needed to

13  be segregated from GP inmates for their own protection.  (Id.)  Based on these allegations, it is

14  reasonable to infer that defendants Place and Kinder knew that plaintiff, a PC inmate, faced a

15  serious risk of harm when he was permitted to be in close physical proximity to the GP inmates as

16  he ascended the stairs from the holding area to the courtroom.  Based on these allegations, the

17  undersigned finds that plaintiff has alleged sufficient facts against defendants Place and Kinder to

18  state a potentially Fourteenth Amendment claim.  Accordingly, defendants' motion to dismiss the

19  failure to protect claims against defendants Place and Kinder should be denied.

20          C.   Medical Care Claims

21          Plaintiff alleges that defendants Place and Kinder violated his constitutional right to

22  adequate medical care for the injuries he suffered as a result of the assault by inmate Abeyta.  In

23  particular, plaintiff alleges that defendants Place and Kinder caused a delay in his receipt of

24  medical care from Dr. Nugget which could have resulted in disfigurement of his lip or a painful

25  infection.  (Id. at 50.)  Plaintiff alleges that he suffered unnecessary pain as a result of his delay in

26  receipt of treatment.  (Id.)

27  ////

28  ////

1    *Legal Standard*

2         To state a section 1983 claim for a constitutional violation based on inadequate medical

3    care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

4    indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pretrial

5    detainee's claim for unconstitutional conditions of confinement arises from the Fourteenth

6    Amendment Due Process Clause rather than from the Eighth Amendment prohibition against

7    cruel and unusual punishment.  Bell v. Wolfish, 441 U.S. 520, 535, 1979).  Nevertheless, the

8    same standards are applied, requiring proof that the defendant acted with deliberate indifference.

9    See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

10        To prevail, plaintiff must show both that his medical needs were objectively serious, and

11   that defendant possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294,

12   297–99 (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992).  A serious medical

13   need is one that significantly affects an individual's daily activities, an injury or condition a

14   reasonable doctor or patient would find worthy of comment or treatment, or the existence of

15   chronic and substantial pain.  See, e.g., McGuckin v. Smith, 974 F.2d 1050, 1059–60 (9th Cir.

16   1992), overruled on other grounds by WMX Techs. v. Miller, 104 F.2d 1133, 1136 (9th Cir.

17   1997) (en banc ).

18        Deliberate indifference may be shown by the denial, delay or intentional interference with

19   medical treatment or by the way in which medical care is provided.  Hutchinson v. United States,

20   838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official must both

21   be aware of facts from which the inference could be drawn that a substantial risk of serious harm

22   exists, and he must also draw the inference.  Farmer v. Brennan, 511 U.S. 825, 837, (1994). Thus,

23   a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and

24   disregards that risk by failing to take reasonable measures to abate it."  Id. at 847.  "[I]t is enough

25   that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."

26   Id. at 842.  A physician need not fail to treat an inmate altogether in order to violate that inmate's

27   Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).

28   ////

1       A failure to competently treat a serious medical condition, even if some treatment is

2   prescribed, may constitute deliberate indifference in a particular case. Id. However, it is

3   important to differentiate common law negligence claims of malpractice from claims predicated

4   on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In

5   asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support

6   this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing

7   Estelle, 429 U.S. at 105–06).

8       *Discussion*

9       Defendants argue that plaintiff has not alleged any facts demonstrating that defendant

10  Place acted with deliberate indifference to a serious medical need. In essence, plaintiff is arguing

11  that by telling plaintiff that he did not need medical care, defendant Place delayed the treatment

12  he received from Dr. Nugget.

13      A delay in medical care must have caused harm. See, e.g., O'Loughlin v. Doe, 920 F.2d

14  614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to

15  alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of

16  neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary

17  and wanton infliction of pain); Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir. 1988) (no more

18  than negligence stated where prison warden and work supervisor failed to provide prompt and

19  sufficient medical care); Wood v. Housewright, 900 F.2d 1332, 1334, 1335 (1990) (affirming

20  finding that 11–day delay in treatment for broken orthopedic pin in inmate's shoulder did not

21  cause sufficient harm in part because "the only remedy immediately available was a prescription

22  for painkillers."); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970) (11–day delay in treating

23  inmate's "serious facial bone fractures" did not violate Eighth Amendment.)

24      The only harm plaintiff suffered as a result of the alleged delay in his receipt of medical

25  care was additional pain. However, the alleged delay in plaintiff's receipt of treatment from Dr.

26  Nugget from the time plaintiff initially requested it from defendant Place was very brief, i.e., an

27  hour or two at most. Pursuant to the case law cited above, the undersigned finds that this brief

28  delay did not constitute deliberate indifference. Accordingly, the motion to dismiss plaintiff's

14

1    inadequate medical care claim against defendant Place should be granted.

2         Defendants move to dismiss plaintiff's inadequate medical care against defendant Kinder

3    on the grounds that there are not allegations that defendant Kinder was aware that plaintiff

4    suffered any injury after being attacked by inmate Abeyta.  Defendants argue that plaintiff's only

5    allegation against defendant Abeyta is that he failed to ask plaintiff if he wanted medical

6    attention.

7         The undersigned agrees with defendants that plaintiff has failed to link defendant Abeyta

8    to his claim of inadequate medical care.  Moreover, as discussed above, plaintiff's claim of

9    inadequate medical care is based on his brief delay in receipt of treatment from Dr. Nugget.  Even

10   if plaintiff could link defendant Abeyta to this delay, he would still not have stated a colorable

11   inadequate medical care claim for the reasons discussed above.  Accordingly, plaintiff's claim of

12   inadequate medical care against defendant Kinder should be dismissed.

13        D.  Conspiracy

14        Plaintiff alleges that in order to escape liability for their involvement in the assault on

15   plaintiff by inmate Abeyta, defendants Place and Kinder intentionally failed to investigate the

16   assault and agreed not to report it or to issue any disciplinary charges against inmate Abeyta.

17   (ECF No. 21 at 51.)

18        To allege a claim of conspiracy under section 1983, plaintiff must allege facts with

19   sufficient particularity to show an agreement or a meeting of the minds to violate his

20   constitutional rights.  Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998);  Woodrum v.

21   Woodward Cnty., 866 F.2d 1121, 1126 (9th Cir. 1989).  Thus, pleading a conspiracy requires

22   more than a conclusory allegation that defendants conspired to deprive plaintiff's civil rights.

23   The Ninth Circuit applies a heightened pleading standard to conspiracy claims under section 1983

24   and has held that mere conclusory allegations of conspiracy (i.e. bare allegations that a defendant

25   "conspired" with another) are insufficient to state a claim.  See Harris v. Roderick, 126 F.3d

26   1189, 1195 (9th Cir.1997); Buckey v. Cnty. of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992).

27        Defendants argue that plaintiff's conclusory conspiracy claims are contradicted by other

28   allegations in the amended complaint.  For example, plaintiff alleges that one week after the

1   incident, defendant Place issued an incident report.  (ECF No. 21 a 21.)  Plaintiff alleges that

2   defendant Place reported the facts of the assault to the District Attorney for possible prosecution.

3   (Id. at 28.)  Plaintiff also alleges that inmate Abeyta was subject to disciplinary hearings and

4   found guilty of assault.  (Id. at 23.)

5          Plaintiff's conclusory claims of conspiracy are unsupported and contradicted by other

6   allegations in the amended complaint, as set forth above.  For this reason, defendants' motion to

7   dismiss plaintiff's conspiracy claims should be granted.

8          E.   State Law Negligence Claims

9          Plaintiff alleges that defendants acted negligently, in violation of state law, when they

10  failed to protect him from the attack by inmate Abeyta.  (ECF No. 21 at 52.)  Plaintiff also alleges

11  that defendant Sacramento County acted negligently by maintaining the jail in a condition that

12  increased the risk that plaintiff would be injured.  (Id. at 53.)

13         Regarding the individually named defendants, defendants argue that they are immune

14  from liability for acts of another person, i.e., inmate Abeyta, pursuant to California Government

15  Code § 820.8.   This statute provides,

16                   Except as otherwise provided by statute, a public employee is not
                     liable for an injury caused by the act or omission of another person.
17                   Nothing in this section exonerates a public employee from liability
                     for injury proximately caused by his own negligent or wrongful act.
18

19  Cal. Govt. Code § 820.8.

20         This statute precludes only vicarious liability through the doctrine of respondeat superior,

21  and by its own terms, it does not apply when the public employee seeking immunity has himself

22  committed a wrongful act.  See Weaver v. State of California, 63 Cal.App.4th 188, 202-03

23  (1998); see also Martinez v. Cahill, 215 Cal.App.2d 823, 824 (1963) (interpreting predecessor

24  statute).

25         Plaintiff is claiming that defendants created and implemented a policy which caused him

26  to be assaulted by a GP inmate.  Plaintiff's claim against defendants is not based on the doctrine

27  of respondeat superior.  Instead, plaintiff alleges that defendants proximately caused the injuries

28  he suffered as a result of the assault.  Defendants' motion to dismiss plaintiff's state law claims

1   pursuant to California Penal Code § 820.8 should be denied.

2      Defendants move to dismiss plaintiff's negligence claim against defendant Sacramento

3   County on grounds that defendant Sacramento County is not liable for an injury to a prisoner

4   pursuant to California Government Code § 844.6(a)(2).  Defendants also argue that, pursuant to

5   California Government Code § 845.2, defendant Sacramento County is immune to actions

6   alleging insufficient equipment, personnel or facilities.

7      California Government Code Section 844.6(a)(2) provides a public entity is not liable for

8   an injury to any prisoner.  Pursuant to this section, defendant Sacramento County is not liable for

9   the injuries plaintiff suffered as a result of the assault by inmate Abeyta.  Accordingly, plaintiff's

10   negligence claim against defendant Sacramento County should be dismissed.

11      The undersigned need not determine whether California Government Code § 845.2 bars

12   plaintiff's claim against defendant Sacramento County for maintaining unsafe jail condition,

13   which allegedly caused the assault by inmate Abeyta, as this claim is barred by § 844.6(a)(2).

14   V.  Motion to Dismiss For Failure to Exhaust Administrative Remedies

15      Plaintiff alleges that defendant Oania retaliated against him for filing grievances.

16   Defendants move to dismiss this claim on grounds that plaintiff failed to exhaust his

17   administrative remedies.

18      In Woods v. Carey, 684 F.3d 934, 936 (9th Cir. 2012), the Ninth Circuit held that the

19   notice required under Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Wyatt v.

20   Terhune, 315 F.3d 1108 (9th Cir. 2003), regarding the requirements for opposing motions to

21   dismiss for failure to exhaust administrative remedies must be provided to a pro se prisoner

22   plaintiff at the time the defendants' motion was filed.  Defendants' motion does not contain the

23   notice as required by Woods.[1]  For this reason, defendants' motion to dismiss plaintiff's

24   retaliation claim for failure to exhaust administrative remedies should be denied.[2]

25   ////

26   _____

[1]   While plaintiff is now out of custody, at the time he filed his opposition to the pending motion,
27   he was incarcerated in the Sacramento County Jail.
[2]   Motions to dismiss for failure to exhaust administrative remedies should be raised in non-
28   enumerated 12(b) motions.  Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003).

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion to dismiss (ECF No. 28) be granted in part and denied in part;

2.  Defendants' motion be granted as to 1) plaintiff's official capacity claims against the individually named defendants; 2) plaintiff's inadequate medical care claims against defendants Place and Kinder; 3) plaintiff's conspiracy claims against defendants Place and Kinder; 4) plaintiff's negligence claim against defendant Sacramento County; defendants;

3.  Defendants' motion be denied as to 1) plaintiff's failure to protect claims against all defendants; 2) plaintiff's negligence claims against the individually named defendants; 3) the claim that plaintiff failed to administratively exhaust his retaliation claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 31, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Ag2165.mtd

18